**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| SHARPER IMPRESSIONS PAINTING CO, | : |
| Plaintiff, | : Case No. 2:21CV2245 |
| vs. | : JUDGE MARBLEY |
| MICHAEL THIEDE, et al | : MAGISTRATE JUDGE VASCURA |
| Defendants. | : |

**DEFENDANTS' MOTION TO TRANSFER VENUE**
**TO THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

Defendants, by and through undersigned counsel, hereby move, pursuant to 28 U.S.C. § 1404(a), that venue be transferred to the Northern District of Georgia where all the events involving an alleged violation of the restrictive covenant in the Sales Manager Subcontractor Agreement between Plaintiff and Defendant Michael Thiede occurred and all the witnesses and Defendants are located because (1) two of the Defendants, Kerry Lynn Thiede and Kerry's Fine Painting LLC, never entered into any forum-selection agreement with Plaintiff; and (2) any waiver by Defendant Michael Thiede in the forum-selection provision of the Sales Manager Subcontractor Agreement was never intended to reach a business wholly owned and operated by his wife nor to deprive him of practical access to live testimony by individuals or customers he allegedly lured away from Plaintiff before a  judge and jury familiar with the local geography and custom of preferring to do business with friends and family.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO**
**TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

## I.  Background

Plaintiff has alleged that Defendants are unlawfully competing with it in the commercial and residential painting industry primarily because Defendant Michael Thiede had a restrictive covenant in his Subcontractor Agreement that prohibited for 18 months direct or indirect competition within a 50-mile radius of any office where Plaintiff conducted business.  The only Defendant who signed that Agreement, Ex. A to the Sharp Declaration, Doc #:2-1, PAGEID ## 60-63, was Michael Thiede.  The Agreement was between only Plaintiff and him.  *Id.* at 60.

Plaintiff has made a series of allegations that exaggerate or misrepresent what actually happened.  For purposes of this Motion to Transfer, the core facts are undisputed or undisputable: two of the three Defendants never agreed to venue in this forum; all the allegedly unlawful actions occurred within the Northern District of Georgia where critical witnesses and locations are and a custom of doing business has been established; and, as Michael Thiede's Declaration, Ex. A hereto, reflects at ¶ 13, "the commercial and residential painting industry is localized, and the custom is to secure services through personal relationships, such as my membership in the church referred to in the Complaint or close friendship with another customer."

The physical presence Defendants have had in Ohio seems limited to three days of Michael Thiede's training in 2014.  Thiede Dec., ¶ 4.  Everything else took place in Georgia, though he communicated from there by telephone and computer with Plaintiff.  All the subcontractors, customers, and activities Plaintiff has alleged are located or occurred in Georgia.  *Id.* at ¶¶ 5-7.  In addition to the "considerable inconvenience" for him to travel to Columbus for litigation, *Id.* at ¶ 8, securing live testimony from the subcontractors and customers will be nearly impossible.  *Id.* at ¶¶ 11-12.

Plaintiff presented the Agreement on a take-it-or-leave-it basis, allowing no editing and brooking "no meaningful negotiations." *Id.* at ¶¶ 9-10.  Plaintiff employed Defendant Michael Thiede in part because he "had a year or so experience in professional painting and longer in sales work." *Id.* at ¶ 14.  Defendant Kerry Lynn Thiede is hardly his cat's paw: she "had ample skills, training, knowledge, and experience to pursue her painting business[.]" *Id.* at ¶ 15.  Nor did Defendant Michael Thiede dissemble about his career goals when he left employment with Plaintiff: "[M]y initial plan was in fact to flip houses though the COVID-19 pandemic and economic recession thwarted that plan and left me advising my wife on a periodic basis but working often on distant prospects and jobs beyond the restrictive covenant radius." *Id.* at ¶ 15. The witness with whom he was going into that business also resides in the Northern District of Georgia where the real estate market was located.

Two of Plaintiff's former subcontractors, whom it alleges Defendant Michael Thiede lured away, "already stopped working with it when my wife employed them, and their reasons for stopping that work did not include any solicitation by me." *Id.* at ¶ 19.  One, Obdulio Perez, had been terminated by Plaintiff for work quality issues, the other, Felix Perez, resigned in a pay dispute. *Id.*

Finally, the spoliation Plaintiff alleges did not occur.  Defendant Michael Thiede erased or attempted to erase personal information, such as private emails, photographs, and financial documents, he had accumulated on his laptop during more than five years of employment.  *Id.* at ¶ 22.  That personal use was consistent with Plaintiff's policies.  *Id.*  He believed, based on his familiarity with Plaintiff's operations, that all non-personal information was backed up on its information technology.  *Id.* at ¶ 20.  He also believed that he was authorized to access his laptop and remove personal files before returning it.  *Id.* at ¶ 23.  The cell telephone he returned had a

SIM card in it. *Id.* at ¶ 21.

Attached to the Sharp Affidavit filed with this Court are "excerpts readily available on the Internet," including social media and government records, establishing that Defendants "made no secret of her business, its customers, and its operations." *Id.* at ¶ 24. They were not engaged in covert competition. Beyond that, "[c]omparing and contrasting the Sharper Impressions web site and social media with those of my wife's business demonstrates a distinct voice and marketing effort." *Id.* at ¶ 25.

Overall, Plaintiff paints a story about unique sales and methods, while the simple truth is that fair competition did not require converting or stealing anything from Plaintiff. As Defendant Michael Thiede attests, "[t[he Complaint describes how much independence I had as a Sales Manager, and the reality is that most of the business I secured for Sharper Impressions came through my sales efforts built on my skills, training, knowledge, and experience, not the three-day orientation with Sharper Impressions or development through its expertise and mentoring." *Id.* at ¶ 26.

## II.     Argument

The *forum non conviens* doctrine has been codified by 28 U.S.C. § 1404(a) for situations, like at bar, where venue could be based in either of two District Courts. *Atlantic Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 60 (2013). Three general requirements for transfer are (1) the action could have been filed in the transferee district court; (2) transfer serves the interests of justice; and (3) transfer is convenient for the witnesses and parties. Defendants satisfy all three.

A forum-selection provision in a contract alters the analysis ***for the contracting parties*** because they are deemed to have waived any challenge to the designated venue based on

inconvenience. *Atlantic Marine*, 571 U.S. at 64 ("[T]hey waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."). As for Defendants who have never signed such a provision, the express factors of § 1404(a) apply: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Under those factors, "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Quicken Loans Inc. v. RE/MAX, LLC*, 216 F. Supp. 3d 828, 831 (E.D. Mich. 2016) (citing *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). As its permissive language indicates, "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). A district court thus has "broad discretion" in deciding whether to transfer a case to a different venue. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

The main considerations are: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006).  *See also Means v. United States Conf. of Cath. Bishops*, 836 F.3d 643, 651 (6th Cir. 2016).  Defendants bear the burden of proof on these factors, *Perceptron*, 423 F. Supp. 2d at 729. and, as the Plaintiff's allegations, the exhibits Plaintiff submitted in support of the Sharp Declaration, and Defendant Michael Thiede's Declaration reflect, the two Defendants who never agreed to a forum-selection provision have amply carried that burden even though not every consideration supports transfer.

The forum-selection provision does not even impose an absolute barrier for Defendant Michael Thiede, though such a provision "will almost always control." *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 370 (6th Cir. 2008).  *Accord Boling v. Prospect Funding Holdings, LLC*, 771 Fed.Appx. 562, 568 (6th Cir. 2019).  Public interest factors may, however, be considered.  They include "the local interest in having localized controversies decided at home." *Atlantic Marine*, 571 U.S. at 63 n. 6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  The nature of competition in the commercial and residential painting industry around Atlanta, Georgia is the key factual context for this litigation.

"[A]bsent a strong showing that [a forum-selection clause] should be set aside, *Wong v. PartyGaming, Ltd.,* 589 F.3d 821, 828 (6th Cir. 2009), it will impose a presumption of venue.  The enforceability factors are: "1) whether the clause was obtained by fraud, duress, or other unconscionable means; 2) whether the designated forum would ineffectively or unfairly handle the suit; and 3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* (citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.,* 176 F.3d 369, 375 (6th Cir.1999)).  Defendant Michael Thiede also carries the burden of proof on enforceability.  *Wong,* 589 F.3d at 828 (citing *Shell v. R.W. Sturge, Ltd.,* 55 F.3d

1227, 1229 (6th Cir.1995)).

The standard is that enforcement would effectively deprive him of "a meaningful day in court." *Preferred Capital, Inc. v. Assocs. in Urology,* 453 F.3d 718, 722–23 (6th Cir. 2006). The fact that the clause was not negotiated will not suffice. *Wong,* 589 F.3d at 829. The fact that Defendant Michael Thiede never contemplated, and the absence of negotiations never addressed, that the forum-selection clause would reach a business wholly owned and operated by his wife may, however, be considered. The bottom line is that venue in the Southern District of Ohio will deprive him of practical access to live testimony by individuals or customers he allegedly lured away from Plaintiff before a judge and jury familiar with the local geography and custom in the Northern District of Georgia of preferring to do business with friends and family.

### III. Conclusion

This lawsuit mainly concerns competition by Defendants in the Atlanta market involving Atlanta customers and Atlanta subcontractors and the location and ways in which business is done in that market. A judge and jury familiar with the market and its customs should hear live testimony on whether the Defendants unfairly competed, and their motion to transfer should, therefore, be granted.

Respectfully submitted,

By: */s/ John S. Marshall*
John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)
Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
Helen M. Robinson (0097070)
(*hrobinson@marshallforman.com*)
Madeline J. Rettig (0098816)
(*mrettig@marshallforman.com*)
MARSHALL AND FORMAN LLC

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

                                            250 Civic Center Dr., Suite 480
                                            Columbus, Ohio 43215-5296
                                            (614) 463-9790
                                            Fax (614) 463-9780

## **CERTIFICATE OF SERVICE**

      This is to certify that a copy of the foregoing was filed with the Court on this 6th day of May, 2021 using the CM/ECF system, which will send notification of such filing to all counsel of record. Parties may access this filing through the court's filing system.

                                            By: ___/s/ John S. Marshall___
                                            John S. Marshall (0015160)