UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHARPER IMPRESSIONS PAINTING CO, | : | |
| Plaintiff, | : | Case No. 2:22-cv-02245 |
| v. | : | Judge Algenon L. Marbley |
| MICHAEL THIEDE, et al | : | Magistrate Judge Chelsey M. Vascura |
| Defendants. | : | |

**PLAINTIFF'S MOTION TO ENFORCE AGREED PERMANENT INJUNCTION AND FINAL JUDGMENT ENTRY AND CONTEMPT OF COURT AND REQUEST FOR SANCTIONS**

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into between the following parties:

**Sharper Impressions Painting Company ("Sharper")**
7801 Corporate Blvd., Suite D
Plain City, OH 43064

and

**Michael Thiede ("Thiede")**
4990 Hill Rd. NW
Acworth, GA 30101

and

**Kerry Lynn Thiede ("Kerry Thiede")**
4990 Hill Rd. NW
Acworth, GA 30101

and

**Kerry's Fine Painting LLC ("KFP")**
4990 Hill Rd. NW
Acworth, GA 30101

Thiede, Kerry Thiede, and KFP shall collectively be referred to as "Defendants." Sharper and Defendants shall be referred to individually as a "Party" and collectively as the "Parties." The effective date of this Agreement shall be the last date on which any party to this Agreement signs below ("Effective Date").

## RECITALS

A. Whereas Thiede is a former independent contractor/Sales Manager of Sharper and resigned his position with Sharper effective December 17, 2020. In connection with his relationship with Sharper, Thiede executed a Sales Manager Subcontract Agreement dated February 19, 2014 (the "Agreement");

B. Whereas subsequent to Thiede's resignation from Sharper, disputes developed between the Parties regarding Thiede's and Kerry Thiede's formation of KFP, a business in the same sign industry as Sharper, in violation of Thiede's non-competition and non-solicitation obligations under the Agreement, among other disputes;

C. Whereas these disputes between the Parties culminated in litigation filed by Sharper against Defendants captioned *Sharper Impressions Painting Co. v. Thiede, et al.*, Case No. 2:21-cv-02245, U.S. District Court for the Southern District of Ohio (the "Litigation"), wherein Sharper asserted claims against Defendants for Breach of Contract, Tortious Interference With Contract, Tortious Interference with Business Relationships, Injunctive Relief, Trade Secret Violations, Violations of the Computer Fraud and Abuse Act, Conversion, and Spoliation;

D. Whereas the Court in the Litigation entered a Temporary Restraining Order Against Defendants and in favor of Sharper on May 11, 2021;

E. Whereas the Court in the Litigation entered an Agreed Preliminary Injunction on May 17, 2021;

F. Whereas Thiede filed a counterclaim against Sharper asserting claims of Commercial Misappropriation and Unjust Enrichment;

G. Whereas the Parties desire to forever settle and permanently release all claims, obligations, causes of action, disputes, litigation, and other disputes and differences they have or may have against each other, including the disputes related to Defendants' misappropriation of business opportunities belonging to Sharper while Thiede was acting as a Sales Manager for Sharper, and violations of the restrictive covenants in the Agreement.

Accordingly, the Parties enter into this Agreement based upon the terms set forth below.

NOW, THEREFORE, in consideration of the mutual promises and other good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

I. **TERMS:**

    A. Non-Competition, Non-Solicitation, Injunctive Relief to Sharper and Reporting Obligations of Defendants

        1. Through and including **July 15, 2024**, or such longer period as required until all settlement payment obligations of Defendants to Sharper described below, in Section I.B. (the "Restriction Period"), Thiede, Kerry Thiede and KFP, and any officers, agents, servants, employees, attorneys, as well as those persons acting in active concert or participation with them, shall not directly or indirectly do any of the following within a 50-mile radius of 1946 Heatherbrooke Way NW Acworth GA 30101:

           a. directly or indirectly compete with Sharper Impressions;

2

    b.    directly or indirectly own or manage a residential or commercial painting business;

    c.    provide services as an employee or independent contractor to a residential or commercial painting business;

    d.    solicit or encourage known Sharper Impressions' employees or contractors to work for or provide services to another residential or commercial painting business;

    e.    directly or indirectly employ Sharper Impressions' employees or contractors in another residential or commercial painting business;

    f.    solicit or encourage Sharper Impressions' customers or potential customers on behalf of any other person or entity for residential or commercial painting services;

    g.    directly or indirectly provide painting services to Sharper Impressions' customers or potential customers through another residential or commercial painting business; or

    h.    directly or indirectly access, disclose, communicate, or otherwise use Sharper Impressions' property, trade secrets or confidential information, including but not limited to information contained on any SIM card and any and all other information of any kind concerning Sharper Impressions' business, customers, employees and subcontractors.

2.    Notwithstanding the foregoing obligations of Defendants, during the Restriction Period, Defendants may maintain an office space at 1946 Heatherbrooke Way NW Acworth GA 30101 for the purpose of storing records, receiving mail and managing operations consistent with the foregoing obligations, so long as the office space is not open to the public and contains no storefront or other on-location advertising or signage.

3.    In addition to the above restrictions, for a period of seven years and seven months from the Effective Date, Thiede, Kerry Thiede and KFP, and any officers, agents, servants, employees, attorneys, as well as those persons acting in active concert or participation with them, shall not directly or indirectly do any of the actions in I.A.1.a-h, above, within a 50-mile radius of any Sharper office in Columbus, Ohio (7801 Corporate Blvd, Suite D, Plain City, OH 43064); Indianapolis, Indiana (148 West Carmel Drive, Carmel, IN 46032); Kansas City, Missouri (6224 Nieman Rd., Shawnee, KS 66203); or Nashville, Tennessee (18 Cadillac Drive, Brentwood, TN 37207).

4.    Defendants shall provide signed and notarized affidavits, sworn under oath, beginning on March 1, 2022, and on the first day of every third month

thereafter during the Restriction Period, in which they each (1) provide a full list of their customers, by name, address, and project amounts; (2) affirm under oath the accuracy and completeness of the customer information provided; and (3) affirm under oath that they have not violated this Agreement. Defendants shall submit these affidavits to Geoff Sharp by e-mail to gsharp@sharperimpressionspainting.com.

5. During the Restriction Period, Defendants shall further cause LGE Community Credit Union and any and all such other financial institutions at which Defendants may open any checking or savings account to provide full unredacted bank statements for each account to gsharp@sharperimpressionspainting.com on a quarterly basis, beginning on April 1, 2022, and on the first day of every third month thereafter during the Restriction Period.

6. During the Restriction Period, Defendants shall further cause JoistApp (and any other similar service used for quoting, customer communication, project management, sales or collections/bookkeeping) to send to Geoff Sharp at gsharp@sharperimpressionspainting.com on a quarterly basis an export of all customer information contained in any JoistApp account associated with any Defendant. Such export shall include all customers or potential customers who were provided a quote, whether or not the customer signed a contract.

7. Defendants agree to allow Talon Recovery to conduct an audit of all books and records of any painting business with which any Defendant is associated, at any time during the Restriction Period but no more frequently than every three months, for the purpose of ensuring compliance with Defendants' obligations under this Agreement. Sharper shall bear the cost of any such audit, except that, if any non-compliance with Defendants' obligations is found, the cost of the audit in which such non-compliance is found shall be borne by Defendants.

8. The Parties hereby agree that the Non-Competition and Non-Solicitation and Reporting obligations of Defendants shall be submitted to the Court for entry by the Court in the form of the *Agreed Permanent Injunction and Final Judgment Entry,* a true and accurate copy of which is attached hereto as Exhibit A ("Injunction and Judgment Entry").

9. The Parties agree that any breach of Defendants' obligations in Paragraph I.A.1 or 3 of this Agreement or the Injunction and Judgment Entry by any Defendant shall result in irreparable harm to Sharper. In any action for contempt of court or otherwise, Sharper shall be entitled to immediate further injunctive relief. Sharper shall also be entitled to liquidated damages in the amount of $10,000 per violation, plus three times the total amount of any painting contract wrongfully performed by Defendants. Sharper shall also be entitled to an award of its attorneys' fees in any such enforcement proceeding, as well as recover of its full attorneys' fees incurred in the

Litigation, and any other remedies available at law or equity to which it may be entitled as a result of such breach. If any Defendant breaches this Agreement at a time when any amount of the Settlement Payment described below remains unpaid, the full amount of the remaining Settlement Payment, including accrued interest, shall become immediately due and payable.

B. **Payment Obligations of Defendants to Sharper**

1. Defendants shall pay to Sharper the amount of One Hundred Seventy-Seven Thousand Dollars ($177,000) (the "Settlement Payment") as follows: One Hundred Twenty Thousand Dollars ($120,000), within ten (10) business days after the Court's approval and entry of the Injunction; Fifty-Seven Thousand Dollars ($57,000), paid in monthly installments of a minimum of Five Hundred ($500) per month. All payments are to be paid by Electronic Funds Transfer to an account designated by Sharper, with monthly installments to be paid on the fifteenth calendar day of the month, beginning March 1, 2022, and continuing until fully paid.

2. Interest on the amount of the Settlement Payment that remains unpaid as of January 1, 2022, shall be assessed in the amount of 7.5% of the unpaid amount. Such amount shall be added to the unpaid balance and become part of the Settlement Payment. Such interest shall be assessed annually thereafter until the entire Settlement Payment is paid.

3. Defendants may pay more than $500.00 in any month without penalty.

4. If Defendants fail to make any monthly payment in the amount of $500.00 or more, Defendants must cease all painting activity, no matter where it takes place, until they have brought their payments current. This requirement is in addition to all other remedies available to Sharper in this Agreement or otherwise.

5. Judgment shall be entered against Defendants, jointly and severally, in the amount of the Settlement Payment (One Hundred Seventy-Seven Thousand Dollars ($177,000)), as part of the Injunction and Judgment Entry, together with pre- and post-judgment interest to Sharper at the rate of five percent (7.5%) per annum from the date of default, and Sharper's reasonable attorney's fees in connection with such Judgment, in the amount to be determined by the Court. However, provided Defendants shall comply with the terms and conditions of this Agreement, Sharper will refrain from taking any action to collect the Judgment, apart from accepting Settlement Payment installments as set forth herein, unless and until such time as Defendants shall be in default on the terms of this Agreement. Defendants shall be in default of this Agreement if any payment is not delivered to Sharper on or before the date required as set forth in Paragraph I.B.1 of this

Agreement. Upon Defendants' completion of payment of the Settlement Payment, including all accrued interest, Plaintiff will cause to be filed a Satisfaction of Judgment within thirty (30) days of receipt of a written request by Defendants which references this provision.

C.     Further Representations and Promises of Defendants

As a condition precedent and a material inducement for Sharper to enter into this Agreement with Defendants, Defendants warrant, promise, and represent to Sharper that:

1. Defendants have returned or destroyed all property of Sharper, and have not retained or disseminated any Sharper property, documents and information, or copies thereof, in any form.

2. Should Defendants, or any one of Defendants, be in a position to hire one or more sales employees in connection with any painting business, Defendants agree to first extend an offer of employment to Steven Eskew, and to inform Plaintiff of such offer and whether it was accepted.

3. Defendants agree, as part of their obligations under this agreement and the Agreed Permanent Injunction, not to provide any assistance, information or knowledge regarding painting with BlueDove Painting LLC, or its owners or employees, including but not limited to Steven Eskew.

4. Defendants agree that, should one or more of them obtain any painting leads within a 50-mile radius of 4990 Hill Rd. NW, Acworth, GA 30101, such leads will be forwarded to Sharper, and not to any other painting business or person (including, but not limited to, BlueDove or any other painter, company or salesperson). Such leads shall be sent by E-mail to gsharp@sharperimpressionspainting.com within three (3) calendar days of receipt by Defendants of the lead.

## II.     RELEASES:

A.     In consideration of the specified terms contained herein and for other good and valuable consideration, Sharper, for itself and for its past and present shareholders, managers, members, directors, officers, employees, attorneys, representatives, agents, successors, assigns, parent companies, affiliates, and beneficiaries (collectively, "Sharper Agents"), does hereby release, acquit and forever discharge Defendants, and their respective past and present shareholders, members, directors, officers, attorneys, parent companies, affiliates, and beneficiaries (collectively, "Defendants' Agents"), from any and all claims, demands, judgments, actions, causes of action, damages, losses, attorneys' fees, costs, expenses, and liabilities of any nature related to the Litigation, whether known or unknown, fixed or contingent, at law or in equity or otherwise, and whether or not based on common law or any federal or state statute, whether suspected or unsuspected and whether now or previously or hereafter recognized, that Sharper has

6

or may have against Defendants. This release specifically excludes any action that may be taken by Sharper to enforce the terms of this Agreement, the Injunction, and the Judgment Entry.

      B.    In consideration of the specified terms contained herein and for other good and valuable consideration, Defendants, for themselves and for their respective Defendants Agents, do hereby release, acquit and forever discharge Sharper, and the Sharper Agents, from any and all claims, demands, judgments, actions, causes of action, damages, losses, attorneys' fees, costs, expenses, and liabilities of any nature related to the Litigation, whether known or unknown, fixed or contingent, at law or in equity or otherwise, and whether or not based on common law or any federal or state statute, whether suspected or unsuspected and whether now or previously or hereafter recognized, that Defendants have or may have against Sharper. Notwithstanding anything to the contrary, this release excludes any action that may be taken by Defendants to enforce the terms of this Agreement.

**III.   NO ADMISSION OF LIABILITY:** The Parties hereto acknowledge that the terms of this Agreement shall not be construed or interpreted as an admission or acknowledgement of the Parties, or anyone acting on their behalf, of any liability whatsoever to any other Party.

**IV.   ATTORNEY'S FEES:** In addition to the remedies to Sharper set forth elsewhere in this Agreement, in any proceeding alleging a breach of this Agreement, the prevailing Party shall be awarded its reasonable attorneys' fees and costs relating to that proceeding.

**V.   ENTRY OF PERMANENT INJUNCTION AND DISMISSAL OF LITIGATION:** Within five (5) business days after the Effective Date of this Agreement, the Parties shall present the Injunction and Judgment Entry to the Court for entry. The Parties shall bear their own costs, including attorneys' fees, except as otherwise provided herein. If the Court declines to enter the Injunction and Judgment Entry, the Parties agree to work in good faith to resolve the Court's concern, consistently with this Agreement, within five (5) business days.

**VI.   NON-DISPARAGEMENT:** The Parties agree that they will not disparage the other, and they will not make any statement to any third party that could reasonably be foreseen to cause harm to the personal or professional reputation of the other, its business, members, employees, officers, directors, or executives. This provision shall not apply to statements made under oath if compelled to testify pursuant to lawful subpoena or court order or as necessary to enforce the terms of this Agreement. This provision is a material term of this Agreement.

**VII.   ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the Parties with respect hereto. There are no other agreements, oral or written, express or implied, between the Parties, except this Agreement with respect to the matters set forth herein. The terms of this Agreement are contractual, and not merely a recital. No modifications or amendments to this Agreement shall be effective unless the same be in writing and duly executed by all Parties hereto.

**VIII.   SEVERABILITY:** If any provision of this Agreement or the application thereof is adjudicated to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision or application of this Agreement which can be given effect without the invalid or unenforceable provision or application.

IX. **ORIGINAL AND COUNTERPARTS:** This Agreement may be executed in separate identical counterparts, each of which shall constitute an original, and all of which shall constitute a single Agreement. It shall not be necessary, in making proof of this Agreement, to produce or account for more than one such counterpart. The Parties agree that a facsimile or scanned signature will suffice as an original.

X. **ACKNOWLEDGMENTS:** Each of the Parties hereto acknowledges that they have read and fully understand the terms of this Agreement; that the individuals executing this Agreement are authorized to do so on their own behalf and on behalf of the entities for whom they execute this Agreement; that they have had a full opportunity to consult with counsel regarding the terms of this Agreement; and that they enter into this Agreement knowingly and voluntarily and with full authority for the purposes of making a full and final adjustment, compromise and resolution of the matters set forth herein, and that this Agreement was the result of negotiation and discussion between the Parties and their respective counsel and therefore shall be deemed jointly prepared and no particular Party is deemed to be the drafter of this Agreement. Accordingly, in any subsequent proceeding interpreting and/or construing this Agreement, the terms and provisions shall not be construed against either Party on account of drafting.

XI. **ASSIGNABILITY:** This Agreement shall bind the parties and their heirs, executors, administrators, personal representatives, dependents, successors, and assigns. Neither this Agreement, nor any right or interest hereunder shall be assignable by Defendants or any of their beneficiaries or legal representatives without the prior consent of Sharper.

XII. **NON-WAIVER:** Any waiver by any Party of any breach of violation of any term or condition of this Agreement shall not operate as a waiver of any other breach of the Agreement. Any failure to enforce any provision of this Agreement shall not operate as a waiver of that provision or of any other provision of the Agreement, or constitute or be deemed a waiver or release of any rights relating to the Agreement, either at law or in equity.

XIII. **HEADINGS:** The Parties agree that the headings of the paragraphs herein are intended and inserted solely for convenience of reference and that such paragraph headings shall not be deemed, construed or interpreted to affect the meanings, construction, or effect of this Agreement.

XIV. **CONSIDERATION:** The Parties acknowledge that adequate and sufficient consideration has been exchanged for the mutual promises set forth in this Agreement.

XV. **GOVERNING LAW:** The validity, construction, and interpretation of this Agreement shall be governed by the laws of the State of Ohio without regard to conflict of law principles. The Parties agree that the United States District Court for the Southern District of Ohio retains jurisdiction to enforce the terms of this Agreement. The Parties further agree that this Agreement and the Injunction and Judgment Entry may be enforced under any applicable civil or criminal law in either Ohio or Georgia, at Sharper's election.

**WHEREFORE**, the Parties hereto have read all of the foregoing, understand the same, and agree to all of the provisions contained here.

**SHARPER IMPRESSIONS PAINTING CO.**

By: _[signature]_

Print Name: Geoff Sharp

Title: President

Date: 12-13-21

**KERRY'S FINE PAINTING, LLC**

By: _Kerry Thiede_

Print Name: Kerry Thiede

Title: President

Date: 12/13/2021

**MICHAEL THIEDE**

_[signature]_

Date: 12-13-21

**KERRY LYNN THIEDE**

_Kerry Lynn Thiede_

Date: 12/13/2021