IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SHARPER IMPRESSIONS PAINTING CO.,** : | |
| : | Case No. 2:21-cv-02245 |
| **Plaintiff,** : | |
| : | Chief Judge Algenon L. Marbley |
| v. : | |
| : | Magistrate Judge Chelsey M. Vascura |
| **MICHAEL THIEDE, et al.** : | |
| : | |
| **Defendants.** : | |

## OPINION & ORDER

### I.  INTRODUCTION

This matter is before the Court on Plaintiff Sharper Impressions Painting Co.'s Motion to Enforce Agreed Permanent Injunction and Final Judgment Entry and Contempt of Court and Request for Sanctions (ECF No. 37).  For the reasons set forth below, this Court **DENIES** Plaintiff's Motion to Enforce.  The Court also **DENIES AS MOOT** Defendant's First Motion for Leave to File (ECF No. 46) and **DENIES** Defendant's Second Motion for Leave to File (ECF No. 48).

### II.  BACKGROUND

#### A.  The Underlying Case

This case arose originally out of Defendant Michael Thiede's employment with Sharper Impressions Painting Co. ("Sharper Impressions" or "SIP") from 2014 to 2020 and a subcontractor agreement he signed incident to that employment.  As set forth previously by this Court: [1]

> Sharper Impressions is an interior and exterior painting service with residential and commercial customers.  Sharper Impressions is an Ohio corporation with its principal place of business in Plain City, Ohio; Sharper Impressions also operates

---

[1] A fuller treatment of the factual background of this case can be found in this Court's May 11, 2021, Opinion & Order (ECF No. 17).  The facts set forth here are drawn from that decision.

> in Tennessee, Indiana, Missouri, Kansas, and most relevant here, Georgia. Sharper Impressions has an Atlanta office located at 875 Mansell Road, Suite A3 in Roswell, Georgia. Mr. Thiede was employed by Sharper Impressions as a Sales Manager in the Atlanta area from February 2014 to December 2020. When he began his employment on February 19, 2014, he signed a Subcontractor Agreement (the "Agreement").

(Op. & Order at 1–2, ECF No. 17 (internal citations omitted)). The Agreement included a non-compete clause, which precluded Thiede from directly or indirectly owning or managing a residential or commercial painting business, providing services to a residential or commercial painting business, or soliciting Sharper Impressions employees, contractors, or customers on behalf of another residential or commercial painting business. (*See* Ex. A ¶¶ 5, 6, ECF No. 2-1 at 9). It also included a confidentiality clause, restricting Thiede from disclosing Sharper Impressions's confidential or trade secret information. (*Id.* § 6).

Thiede worked for SIP from February 19, 2014, until on or about December 17, 2020. As a Sales Manager, Thiede was responsible for meeting with clients, entering contracts with vendors for Sharper Impressions, and managing independent painting contractors. (*See* Op. & Order at 4, ECF No. 17). After leaving Sharper Impressions, Thiede began working with Kerry Lynn Thiede, his wife, for Kerry's Fine Painting, LLC ("KFP"), which competed against Sharper Impressions and actively solicited customers of Sharper Impressions. (*See id.* at 5–6). On May 3, 2021, Sharper Impressions filed suit in this Court against Thiede, his wife, and KFP (collectively, "Defendants"), seeking injunctive relief on the basis of Thiede's competitive conduct and failure to return computer property, including his SIP phone and laptop, which had proprietary information (hereinafter, the "Underlying Action"). (*Id.* at 8–9). Thiede responded with counterclaims of commercial misappropriation and unjust enrichment, alleging that Sharper Impressions used a photograph of Thiede on advertisements for a mail marketing campaign in the metropolitan Atlanta area without Thiede's consent. (*See* First Am. Answer & Countercl. ¶¶ 133–163, ECF No. 22).

The photograph shows Thiede posing as a painter on the side of a family home. (*See id.* ¶¶ 142). The photograph covers the entire mailer, with text advertising a deal for 25% off for a paint job. (*Id.*).

This Court granted Sharper Impressions's Motion for TRO (ECF No. 2) on May 11, 2021. (*See generally* Op. & Order, ECF No. 17). Subsequently, the parties agreed on terms for settlement, which included, among other provisions, the following:

> In consideration of the specific terms contain herein and for other good and valuable consideration, Defendants, for themselves and for their respective Defendants Agents, do hereby release, acquit and forever discharge Sharper, and the Sharper Agents, from any and all claims, demands, judgment, actions, causes of action, damages, losses, attorneys' fees, costs, expenses, and liabilities of any nature related to the Litigation, whether known or unknown, fixed or contingent, at law or in equity or otherwise, and whether or not based on common law or any federal or state statute, whether suspected or unsuspected and whether now or previously or hereafter recognized, that Defendants have or may have against Sharper. Notwithstanding anything to the contrary, this release excludes any action that may be taken by Defendants to enforce the terms of this Agreement.

(Ex. A § II.A, ECF No. 37-1 at 7–8) (hereinafter, the "Mutual Release" provision). The Settlement Agreement was signed on December 13, 2021, and was incorporated by reference in this Court's January 25, 2022, Order granting a permanent injunction and terminating the Underlying Action. (Agreed Permanent Inj. & Final J. Entry, ECF No. 35).

### B. Post-Settlement Developments

In May 2022, Thiede filed suit against Sharper Impressions and its Atlanta affiliate, Sharper Impressions Painting of Atlanta, LLC, in federal court (hereinafter, the "Georgia action"). (*See* Ex. B, ECF No. 37-2; *see also Thiede v. Sharper Impressions Painting Co.*, 1:22-cv-01838 (N.D. Ga.)). In that suit, Thiede brought allegations mirroring those in the counterclaims in the Underlying Action in this Court: he argued that Sharper Impressions has engaged in "wrongful appropriation of image" — in other words, misappropriation — by using his image on mailers sent

3

to addresses in the metropolitan Atlanta area without his consent. (*See* Ex. B, Compl. ¶¶ 13–14, ECF No. 37-2). The mailers in question are identical to the previous mailers at issue in Thiede's counterclaims in the Underlying Action; they use the same photograph of Thiede painting the side of a house, with the exact same marketing language and same 25% off discount offer. (*Id.*; First Am. Answer & Countercl. ¶ 142, ECF No. 22). The difference, however, is that the mailers underlying Thiede's Georgia claim were sent in March 2022, after the Settlement Agreement was signed and finalized. (*See, e.g.*, Aff. of Nancy Fountain ¶ 4, ECF No. 43-4).

Sharper Impressions does not deny that it has been using Thiede's photograph on mailers or sending the mailers as part of a marketing campaign. Instead, it alleged that Thiede has violated the Mutual Release provision of the Settlement Agreement by filing suit in the Northern District of Georgia and asked this Court to impose sanctions of Thiede for the violation. (*See generally* Mot. to Enforce, ECF No. 37). In addition to timely responding, Thiede has filed two further motions, requesting leave of the Court to submit additional responses to Plaintiff's motion to enforce. (*See* Mot. for Leave, ECF No. 46; Mot. for Leave, ECF No. 48). All motions are now ripe for this Court's consideration.

### III.    STANDARD OF REVIEW

District courts have "broad, inherent authority . . . to enforce an agreement in settlement" of actions pending before it, *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 282–83 (6th Cir. 1986); *see also Brock v. Schemer Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) ("Courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them."), especially as public policy favors the settlement of cases without litigation. Thus, settlement agreements should be upheld where equitable to do so, *see Graley v. Yellow Freight Sys., Inc.*, 2000 WL 799779, at *4 (6th Cir. June 14, 2000) (internal citations omitted), with

enforcement typically governed by principles of state contract law. *See Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1191 (S.D. Ohio 2013) (citing *Smith v. ABN AMRO Mortg. Grp. Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011)). Importantly, "[i]n enforcing the agreement, the court is not permitted to alter the terms of the agreement, but rather [] must enforce the settlement as agreed to by the parties." *Heimberger v. Pritzker*, 2015 WL 5582254, at *3 (S.D. Ohio Sept. 23, 2015) (citing *Graley*, 2000 WL 799779, at *4).

### IV. ANALYSIS

#### A. Preliminary Matters

As a preliminary matter, this Court first addresses Defendant Thiede's First and Second Motions for Leave to File (ECF Nos. 46, 48). The Court's analysis focuses on the second of Defendant's motions for leave, as the two motions are identical.[2] After all, if Thiede were granted leave to file an additional reply, the contents of the sur-reply would be before the Court for consideration when ruling on the motion to enforce. The Court, however, finds that the filing of supplemental briefing here is unnecessary and unwarranted.

The Federal Rules of Civil Procedure do not contemplate the filing of sur-replies, and the Court's Local Rules permit additional memoranda only "upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). While there is no one definition of "good cause," the Sixth Circuit has noted that sur-replies may be appropriate "[w]hen new submissions and/or arguments are included in a reply brief, and a non-movant's ability to respond to the new evidence has been vitiated." *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). In such cases, allowing a sur-reply is justified because

---

[2] The second (ECF No. 48) appears to have been filed in response to the Clerk's Notice of Non-Compliance with Local Rule 5.1(c). (*See* ECF No. 47).

considering "arguments raised for the first time in a reply brief . . . deprive[] the [opposing] party of its opportunity to address the new arguments." *Cooper v. Shelby Cnty.*, 2010 WL 3211677, at *3 (W.D. Tenn. Aug. 10, 2010); *cf. Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (noting that "[a]n argument raised for the first time in reply brief will not be considered by this Court" (citing *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986))). Ultimately, this Court has "broad discretion to manage its docket" in determining whether a movant has shown good cause, *ACLU of Kentucky v. McCreary Cnty.*, 607 F.3d 439, 451 (6th Cir. 2010) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)), especially given the Sixth Circuit's "strong preference that claims be adjudicated on their merits." *Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)).

Here, the additional reply is neither warranted by necessity nor provides new evidence or arguments of law. Contrary to Thiede's assertion, Plaintiff's Reply to Defendant's Response to the Motion to Enforce (ECF No. 45) does not add any new claims or requests for relief previously not included in the Motion to Enforce (ECF No. 37) itself. (*Compare* Mot. to Enforce at 10–11, ECF No. 37, *with* Pl.'s Reply at 5–6, ECF No. 45 (identical prayer for relief)). There are, in other words, no new issues raised that Thiede has not already had an opportunity to address. Moreover, the additional reply does not provide any new arguments, but simply repeats the same arguments made previously in Thiede's response memorandum, in some cases verbatim. (*Compare* Memo. in Supp. at 1–4, ECF No. 48-1, *with* Def.'s Resp. at 2–5, ECF No. 43). To the extent that the additional reply adds anything new, it attempts to re-argue Plaintiff's cited caselaw despite previous opportunities to do so. (*See* Memo. in Supp. at 5 (referencing *Kokkonen v. Guardian Life Ins. Corp. of Am.*, 511 U.S. 375 (1974)), ECF No. 48-1).

6

Accordingly, in the absence of good cause, Defendant's Second Motion for Leave to File (ECF No. 48) is **DENIED**. And as the two motions for leave are effectively identical in substance and style, Defendant's First Motion for Leave to File (ECF No. 46) is **DENIED AS MOOT.**

### B. Motion to Enforce

Plaintiff's Motion to Enforce (ECF No. 37) centers on the question of whether a new claim is "related to" a previous claim, if it asserts the same cause of action but arises out of events and actions that did not exist when the first claim was resolved. In the Underlying Action, Thiede alleged that Sharper Impressions had misappropriated his likeness, by distributing flyers with a picture of Thiede in its Atlanta marketing campaign. (*See* First Am. Answer & Countercl. ¶¶ 136, 139–40, ECF No. 22). That counterclaim was subject to the Mutual Release, which barred future litigation of "related" claims. (*See* Mot. to Enforce at 3, ECF No. 37). Now, Thiede again alleges that Sharper Impression is misappropriating his likeness — the same cause of action as his counterclaim that was released — based on the use of his likeness on mailers that were distributed around Atlanta in March 2022. (*See* Def.'s Resp. at 2–3, ECF No. 43). The factual predicate for Thiede's new claim, in other words, is identical, except that it did not exist when the parties signed the Settlement Agreement in December 2021.

Sharper Impressions does not deny that it has continued to send mailers with Thiede's image, without his permission, to potential customers in the metropolitan Atlanta area. (*See generally* Pl.'s Reply to Resp., ECF No. 45). Instead, Sharper Impressions argues that Thiede's response to the mailers (i.e., filing suit in federal court in Georgia) breached the terms of the Settlement Agreement and was the improper course of action in light of this Court's retention of jurisdiction over the Settlement Agreement. Sharper Impressions further asks the Court to hold Thiede in contempt and pay sanctions for the breach. The Court addresses each argument in turn.

First, Sharper Impressions alleges that Thiede's lawsuit in Georgia violates the Mutual Release provision in the Settlement Agreement, which states in relevant part:

> Defendants . . . do hereby release, acquit and forever discharge Sharper . . . from any and all claims . . . related to the Litigation, whether known or unknown, fixed or contingent, at law or in equity or otherwise, and whether or not based on common law or any federal or state statute, whether suspected or unsuspected and whether now or previously or hereafter recognized, that Defendants have or may have against Sharper.[3]

(Settlement Agreement § II.A, ECF No. 37-1 at 7–8). Thiede maintains that his Georgia claim is not "related to the Litigation," even though it involves the same legal cause of action and identical misconduct as his counterclaim in the Underlying Action, and so is not barred by the Mutual Release. That is so, he argues, because the Georgia claim is based on *new* events that did not exist when the Settlement Agreement was signed; the counterclaims in the Underlying Action were based on misappropriation that occurred before December 2021, but the Georgia claim alleges a renewed campaign of misappropriation of Thiede's image by Sharper Impressions that started in March 2022. (*See* Def.'s Resp. at 3, ECF No. 43). And because the new claim rests on actions that "had not occurred when the instant case was resolved," it cannot be considered "related to the Litigation" — or so Thiede suggests. (*Id.* at 4). Thiede relies primarily on case law analyzing the doctrines of *res judicata*, claim preclusion, and when claims arise out of the same "transaction or occurrence" as prior claims.[4] (*Id.* (discussing *Roth v. Glueck*, 2012-Ohio-4407, 2012 WL 4478440 (Ohio Ct. App. 2012); *Grava v. Parkman Twp.*, 653 N.E.2d 226 (Ohio 1995)). But Thiede does not explain how the mutual release in the Settlement Agreement — which is, in effect, a contract

---

[3] The "Litigation" refers to the underlying claims and counterclaims in this case, including Thiede's counterclaim of commercial misappropriation and unjust enrichment. (*See* First Am. Answer & Countercl. ¶¶ 159–63, ECF No. 22).

[4] Although the Ohio First District Court of Appeals did note that the defendant in *Roth* asserted that the plaintiff's claims were precluded by a settlement agreement, the mutual release in that settlement was limited by an additional provision that explicitly allowed for certain claims between the parties to proceed. *Roth*, 2012 WL 4478440, at *6.

8

— implicates *res judicata* or claim preclusion, or why the principles of the abovementioned doctrines are applicable to understanding the scope of the claims released by the Settlement Agreement.

That is not to say that the "transaction or occurrence" analysis is irrelevant. The mutual release provision is not a global settlement: it releases only those claims that are related to the claims in the underlying litigation. This includes, for example, "any and all past, present, or future claims regardless of the theory of recovery" arising out of already-litigated events, *Dennewitz v. Aiu Ins. Co.*, 2004 WL 1118594, at *3 (Ohio Ct. App. May 19, 2004), and claims that Thiede either already asserted or could have asserted at the time of the Settlement Agreement. But Sharper Impressions's assertion that the Mutual Release covers "any claim that Thiede may have against Plaintiff for the alleged misappropriation of his likeness or image *at any point in time*" goes too far. (Mot. to Enforce at 4, ECF No. 37) (emphasis added). There is no indication that the Mutual Release bars claims rooted in events that had not yet happened at the time of the Settlement Agreement;[5] references to "unsuspected," "undiscovered," or "unknown" claims refer, instead, to claims that Thiede could have brought at the time of the Settlement Agreement if only he knew of their existence. *See Dennewitz*, 2004 WL 1118594, at *3 (noting that a mutual release precluded a plaintiff's claim that was not yet ripe at the time of the release but "[arose] out of the same accident" as her previous claim). But one cannot know, discover, or suspect claims that do not yet exist.

The "related to" language provides no harbor for Sharper Impressions's expansive interpretation of the Mutual Release. As a rule, "[c]ontract terms are to be given their 'natural and

---

[5] Plaintiff's citation to Paragraph 10 of the Judgment Entry does not alter this conclusion. (*See* Mot. to Enforce at 5, ECF No. 37). Although the Court resolved and dismissed with prejudice "[a]ll other claims asserted in this action," it did not deal with any unrelated new claims. To the extent that Plaintiff may argue that the language "resolv[ing] all claims" covers future claims, that interpretation is clearly erroneous given the context of the sentence.

usual' meaning . . . unless it is clear . . . that the parties intended to use some specialized or technical definition," *Watkins v.* Brown, 646 N.E.2d 485, 487 (Ohio Ct. App. 1994), with that meaning determined by applying the law of the state's highest court. *See Ellis ex rel. Pendergrass v. Cleveland Municipal School District*, 455 F.3d 690, 697 (6th Cir. 2006); *see also Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999) (noting that, in the absence of a controlling decision of the highest court of the state, a federal court "must attempt to ascertain how that court would rule if it were faced with the issue" by looking to "the decisional law of the state's lower courts, other federal courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the 'majority' rule in making this determination" (citing *Grantham & Mann v. Am. Safety Prods.*, 831 F.2d 596, 608 (6th Cir. 1987))). Here, neither party points to controlling authority from the Supreme Court of Ohio or other Ohio courts interpreting the term "related." In the absence of such authority, the Court looks to past decisions of federal courts, who have previously found in a similar context that claims are related where they arise out of the same act or are based in the same events and occurrences. *See Westport Ins. Corp. v. Coffman*, 2009 WL 243096, at *5, *7 (S.D. Ohio Jan. 29, 2009) (citing *A.C. Strip v. Home Ins. Co.*, 868 F.2d 181, 188–59 (6th Cir. 1989)). It appears, therefore, that while "claims . . . related to the Litigation" includes claims arising from the same factual predicate, a claim is not "related" if it is rooted in an entirely different set of events, actions, and fact, even if it raises the same legal questions. Thiede's new claim in Georgia, in short, is not barred by the Mutual Release as "related to" the counterclaim in the Underlying Action.

Having resolved the fundamental question about the scope of the Mutual Release, the Court now turns briefly to the remainder of Sharper Impressions' arguments in its motion. As the new claim is not subject to the mutual release, Thiede has not violated the Court's January 2022

Judgment Entry (ECF No. 35) terminating the Underlying Action or the Settlement Agreement incorporated therein.[6]  Accordingly, neither contempt of court nor sanctions are warranted.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES AS MOOT** Defendant's Motion for Leave to File (ECF No. 46), **DENIES** Defendant's Second Motion for Leave to File (ECF No. 48), and **DENIES** Plaintiff's Motion to Enforce Agreed Permanent Injunction and Final Judgment Entry and Contempt of Court and Request for Sanctions (ECF No. 37).

**IT IS SO ORDERED.**

*/s/ Algenon L. Marbley*
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  February 9, 2023**

---

[6] In its reply memo, Sharper Impressions appears to suggest that Thiede should have "request[ed] this Court to modify its order or renegotiate the terms of the Settlement Agreement based on his recent allegations" and that Thiede's decision to file suit in Georgia instead "disregards this Court's jurisdiction over all matters in this dispute." (Mot. to Enforce at 4, ECF No. 37).  The Court finds no merit in either contention.  Thiede has no obligation to renegotiate the Settlement Agreement with respect to a new, unrelated dispute, nor should Thiede's new claim be considered a "matter[] in this dispute."  After all, an independent, unrelated claim would not be subject to enforcement pursuant to the terms of the Settlement Agreement.